UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

```
EARL ROSEN, IV,                  :
                                 :
      Plaintiff,                 :
                                 :
           v.                    :   Case No. 2:13-cv-277
                                 :
ANDREW PALLITO, Commissioner     :
of the Vermont Department        :
of Corrections, and CORRECT      :
CARE SOLUTIONS,                  :
                                 :
      Defendants.                :
```

## OPINION AND ORDER

Plaintiff Earl Rosen, IV, an inmate in the custody of the Vermont Department of Corrections ("DOC"), brings this action against DOC Commissioner Andrew Pallito and prison health care provider Correct Care Solutions ("CCS"). Rosen claims that Defendants have failed to provide him with adequate mental health and medical care. He also objects to the DOC's programming requirements, which are allegedly preventing him from being granted parole. Now before the Court are Commissioner Pallito's partial motion to dismiss, Rosen's motion for leave to file a Second Amended Complaint, and Rosen's motion for an order to re-implement certain medical treatment. For the reasons set forth below, the Commissioner's partial motion to dismiss is **granted in part and denied in part**, the motion for leave to amend is **granted in part and denied in part**, and the motion for re-implementation of certain medical treatment is **denied.**

**Factual Background**

For the limited purpose of ruling on the pending motion to dismiss, the facts alleged in Rosen's pleadings will be accepted as true.  As of January 2015 Rosen was 29 years old.  He is currently diagnosed with Schizoaffective Disorder, Bipolar Disorder, and a Generalized Anxiety Disorder.  Before his incarceration, he received mental health treatment at the Howard Center in Burlington, Vermont.  He has also appeared as a party in the Chittenden County Mental Health Court.

Rosen is currently serving a sentence for, among other things, engaging in "prohibited acts" in violation of 13 V.S.A. § 2632(a)(8).  While the parties dispute whether the violation constituted a sexual offense, the statute defines "prohibited acts" as "prostitution, lewdness or assignation."  13 V.S.A. § 2632(a)(8).  Rosen was initially incarcerated at Northeast Regional Correctional Facility ("NERCF") on or about June 23, 2011, and transferred to Northern State Correctional Facility ("NSCF") in March 2013.

The DOC has designated Rosen as having a "serious functional impairment" under 28 V.S.A. § 906.  A "serious functional impairment" is defined, in part, as "a disorder of thought, mood, perception, orientation or memory . . . which substantially impairs judgment, behavior, capacity to recognize reality . . . and which substantially impairs the ability to function within

the correctional setting." 28 V.S.A. § 906.  Defendant CCS has developed a mental health treatment plan, which Rosen claims is inadequate and not in accordance with the treatment plan outlined by the Howard Center.

While in prison, Rosen has received several Disciplinary Reports ("DRs") and has at times been placed in segregation.  He attributes his disciplinary problems to mistreatment of his mental health issues.  For example, in February 2012 he experienced auditory hallucinations and was soon thereafter disciplined for fighting.  For punishment, the DOC placed him in segregation.  Rosen alleges that Defendants should have known his auditory hallucinations would likely result in violence, yet did nothing to attend to his deteriorating mental health prior to that time.  Rosen further alleges that DOC personnel failed to consult with a medical professional to determine whether segregation was appropriate.

Once in segregation, Rosen's mental health condition worsened.  He began to harm himself, and reported to prison personnel his inability to sleep and continued auditory hallucinations.  The Amended Complaint claims that he was held in segregation for longer than was deemed medically appropriate by the DOC's own mental health staff.

In addition to his mental health issues, Rosen has suffered a physical injury while in prison.  On October 20, 2012, he

3

injured his foot playing basketball.  He complained about the injury, and has undergone two x-rays.  Rosen alleges that because of inadequate prison medical care, the foot never healed and continues to hurt.

Rosen also claims that the DOC is requiring him to participate in unnecessary and harmful programming.  The DOC and Commissioner Pallito have required Rosen to participate in the Vermont Treatment Program for Sexual Abusers ("VTPSA").  The Amended Complaint asserts that participation in this program "will cause Plaintiff significant harm."  ECF No. 40 at 6.[1] Rosen also cites a 2013 state court hearing in which the prosecution, defense, and the judge determined that he needed mental health treatment rather than sex offender treatment.

In September 2014, the Parole Board told Rosen that he would not be considered for parole because he was not participating in the VTPSA.  In October 2014, just one month later, Defendants allegedly changed their position and claimed that Rosen still needed to be evaluated to determine whether he needs VTSPA. Defendants also claimed that Rosen had refused to be evaluated. Rosen alleges that he was never offered an evaluation until October 2014.

--------

[1]In opposition to the motion to dismiss, Rosen reports that he has been examined by Dr. Joseph Hasazi, a psychologist.  Dr. Hasazi has reportedly determined that participation in VTPSA would cause Rosen emotional harm.  ECF No. 52 at 3.

The Amended Complaint sets forth seven Counts.  Count I alleges cruel and unusual punishment in the form of inadequate mental health care.  Count II claims discrimination on the basis of Rosen's mental health disability in violation of the Title II of the Americans with Disabilities Act ("ADA").  Count III alleges that placement in solitary confinement and requiring participation in the VTPSA both constitute cruel and unusual punishment.  Count IV claims that solitary confinment violates the Rehabilitation Act, while Count V alleges that solitary confinement violates the Vermont Fair Housing and Public Accommodations Act.  Count VI asserts medical malpractice.  Finally, Count VII claims a failure to follow Rosen's treatment plan in violation of 28 V.S.A. §§ 906-07.

For relief, Rosen seeks both damages and injunctive relief, including proper treatment of his mental health and physical conditions.

## Discussion

### I.   Commissioner Pallito's Partial Motion to Dismiss

Now before the Court is Commissioner Pallito's partial motion to dismiss.  The Commissioner is not moving for the dismissal of Rosen's medical and mental health care claims.  As to all other causes of action, Commissioner Pallito argues lack of subject matter jurisdiction and/or for failure to state a claim.

**A.   Non-medical ADA and Rehabilitation Act Claims**

With respect to Rosen's claims against Commissioner Pallito under the ADA and Section 504 of the Rehabilitation Act, the parties agree that such claims may not be brought against the Commissioner in his individual capacity.[2]

In his official capacity, the Commissioner asserts that Rosen has failed to state a claim for which relief may be granted.  When ruling on such a motion, the Court must accept the factual allegations set forth in the Amended Complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g., Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive the motion, the Plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

---

[2]The Amended Complaint does not specify whether Commissioner Pallito is being sued in his individual capacity, his official capacity, or both.  Subsequent filings, including Rosen's motion for leave to amend, make clear the Plaintiff's intent to sue the Commissioner in both capacities, and to name the Department of Corrections as a Defendant as well.  The Attorney General's office has briefed its defenses to all such claims in the motion to dismiss and in opposition to Rosen's motion to amend.  The Court will therefore address all such claims and defenses in this Opinion and Order.

To state a claim under Title II of the ADA, Rosen must establish that: (1) he is a qualified individual with a disability; (2) the Defendant is subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from the Defendant's services, programs, or activities, or was otherwise discriminated against by reason of his disability. *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196–97 (2d Cir. 2014).[3] "[T]he phrase 'services, programs, or activities' has been interpreted to be a 'catch-all phrase that prohibits all discrimination by a public entity.'" *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012) (quoting *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997)).

There is no dispute that Rosen has a disability.  The Commissioner contends that despite his disability, Rosen is not a "qualified individual" with respect to parole eligibility.  An individual with a disability is "qualified" when, "with or without reasonable modifications to rules, policies, or practices . . . or the provision of auxiliary aids and services," he "meets the essential eligibility requirements for" the service or benefit at issue.  42 U.S.C. § 12131.  The Commissioner submits that Rosen is not "otherwise qualified" because his refusal to

---

[3] The Rehabilitation Act contains these same requirements where the defendant receives federal funding.  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing 29 U.S.C. § 794(a)).

participate in the VTPSA program renders him ineligible for
parole.

In general, Rosen may not challenge the DOC's programming
decisions, as programming is strictly within the discretion of
the DOC and the Vermont Supreme Court has held that such
decisions are not reviewable.  *See Inman v. Pallito*, 2013 VT 94,
¶ 18 ("[a]lthough [the] plaintiff attempts to characterize the
termination of his participation in [the treatment program] as
quasi-judicial, this is a programming decision that falls within
the broad discretion that the DOC must have in order to decide
the proper treatment for each inmate"); *Rheaume v. Pallito*, 2011
VT 72, ¶ 10 (holding that review of programming was not available
because the DOC "is fulfilling . . . statutorily-created
responsibilities").  This principle holds true even when it
results in a longer period of incarceration.  *State v. Cavett*,
2015 VT 91, ¶ 14.

That said, Rosen claims that the DOC is discriminating
against him because his mental health disability prohibits him
from participating in the VTPSA.  This allegation renders his
claim more than a mere disagreement about programming, and
carries it into the realm of federally-prohibited discrimination.
If it were not for Defendants' discrimination, he argues, he
would be relieved of the VTPSA requirement and allowed release on
parole.  With such discrimination, he is compelled to serve

8

additional time in prison.

The Commissioner contends that parole decisions are strictly within the purview of the Parole Board, and that he and the DOC do not have the final say over such determinations.  The Amended Complaint alleges, however, that Rosen "was told that he would be released or eligible for parole when he completed the VTPSA program."  ECF No. 40 at 6.  Accepting this allegation as true, the Parole Board is basing its decision upon DOC's programming determination.  Accordingly, and for all practical purposes, the Commissioner and the DOC hold the key to Rosen's release.

The Commissioner also argues that ADA claim is not ripe because Rosen has not attempted to engage in the VTPSA.  Rosen responds that not only would the program be harmful, but the DOC's communications about the VTPSA have been inconsistent.  The Amended Complaint claims that at one time VTPSA was required, but that more recently the only requirement has been an evaluation for VTPSA.  Facts developed through discovery may determine whether either an evaluation or participation is appropriate given Rosen's mental health issues.  Those facts may also determine whether a reasonable accommodation would allow for participation.  For present purposes, however, the Court finds that Rosen has stated a justiciable claim of discrimination based upon the VTPSA requirement.  The motion to dismiss the non-medical ADA and Rehabilitation Act claims against Commissioner

9

Pallito is therefore **denied**.

**B. Eighth Amendment Claims**

Rosen alleges that his placement in disciplinary segregation violated his rights under the Eighth Amendment.  He also claims that requiring VTPSA participation is cruel and unusual.  In response, the Commissioner argues that any claim against him in his individual capacity claim is barred for lack of personal involvement, that sovereign immunity protects him from paying damages in his official capacity, and that Rosen has failed to state a claim for prospective injunctive relief.

In order to establish an Eighth Amendment violation, Plaintiff must prove "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference . . . require[s] allegations that the charged official acted with a sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation omitted).  "This mental state requires that the charged official act or fail to act while [being] aware of a substantial risk that serious inmate harm will result." *Salahnddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

With respect to the Commissioner's individual capacity liability, Rosen has pled that the Commissioner was directly involved in requiring the VTPSA program.  Specifically, Rosen

10

alleges that he received a letter from the Commissioner dated February 13, 2014, informing him that the VTPSA was required. Missing from the Amended Complaint, however, is any allegation that the Commissioner had knowledge of the harm Rosen might suffer if compelled to participate in the program. Nor is there any allegation that the Commissioner placed Rosen in solitary confinement.

Absent direct personal involvement, Rosen may still allege supervisory liability. The Second Circuit has long held that one or more of the following forms of conduct is sufficient to prove the personal involvement of a supervisor:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]

---

[4]While courts in this Circuit have continued to apply *Colon* since the *Iqbal* decision, the Second Circuit has not yet clarified whether *Iqbal* altered the *Colon* test. *See, e.g., Boyd v. Arnone*, 48 F. Supp. 3d 210, 218 (D. Conn. 2014) ("Because it is unclear whether *Iqbal* overrules or limits *Colon*, the court will continue to apply the categories for supervisory liability set forth in *Colon*."). However, "there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor." *Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011).

The Amended Complaint alleges generally that "Defendant Pallito, as Commissioner of DOC, knows that mentally ill prisoners should not be kept in an environment that worsens their mental illness." ECF No. 40 at 5.  Again, there is no contention that Commissioner Pallito was aware of the harm that might result from participation in the VTPSA program, or that he was personally involved in the decision to place Rosen in segregation.

In response to the motion to dismiss, Rosen contends that "Commissioner Pallito is responsible for overseeing policies and procedures including inmates' mental health issues and disciplinary actions . . . [and is] responsible for the actions taken on his behalf." ECF No. 52 at 12.  These statements echo a theory of *respondeat superior*, which in some contexts is a valid basis for supervisor liability, but fails as a matter of law in a Section 1983 action.  *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)).  "[P]roof of 'linkage in the prison chain of command' is [also] insufficient."  *Id.* (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)).  The Eighth Amendment claims brought against Commissioner Pallito in his individual capacity are therefore **dismissed**.

As to any claim against the Commissioner in his official capacity, the parties agree that sovereign immunity bars him from

12

being sued for damages in his official capacity.  Prospective injunctive relief, however, is still available.  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  In that regard, Rosen asks the Court to "[i]ssue an order requiring Defendants not to mandate any services that would detrimentally affect Plaintiff's mental health."  Allegations of such "services" appear to include the VTPSA requirement.[5]

The Commissioner notes that if Rosen declines to participate in the VTPSA, the worst-case outcome will be that he serves his entire sentence in prison.  Compelling an inmate to serve his sentence does not constitute cruel and unusual punishment.  *See Sheppard v. New York State Div. of Parole*, 2011 WL 2610695, at *4 (June 28, 2011) (citing *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999)).  Rosen's claim for prospective relief on his Eighth Amendment claim is therefore **dismissed.**

C.   **Vermont Fair Housing and Public Accommodations Acts**

Rosen concedes that his state law claims under the Vermont Fair Housing and Public Accommodations Acts are barred by sovereign immunity.  Count V of the Amended Complaint is therefore **dismissed.**

---

[5]  The Commissioner contends that Rosen makes no request for prospective relief with respect to placement in segregation.  The Court has reviewed the prayer for relief in the Amended Complaint and agrees that there is no such request.

### D.   Conclusions Re: Motion to Dismiss

In light of the rulings set forth above, the Court reaches the following conclusions with respect to the Amended Complaint. The Commissioner's motion to dismiss does not address questions of medical or mental health care.  Accordingly, the allegations of inadequate medical and mental health care set forth in Count I may continue.  The ADA claim in Count II and the Rehabilitation Act claim in Count IV may not be brought against Commissioner Pallito in his individual capacity, but may otherwise proceed. The Eighth Amendment claim against the Commissioner set forth in Count III is dismissed, as is Count V.  None of Rosen's other claims are impacted by these rulings.

## II.  Motion for Leave to File Second Amended Complaint

Rosen has moved for leave to file a Second Amended Complaint.  The amended pleading would alter some of the existing allegations, delete Count V (the Vermont Fair Housing and Public Accommodations Act claims), and add a claim of post-filing retaliation.  The Second Amended Complaint would also name Commissioner Pallito in both is individual and official capacities and the DOC as Defendants.

Under Federal Rule of Civil Procedure 15(a), a "court should freely give leave [to amend a pleading] when justice so requires."  However, the Court should deny leave to amend if there is "evidence of undue delay, bad faith, undue prejudice to

the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244
F.3d 104, 110 (2d Cir. 2001).  Futility is assessed based on the
same standard as dismissal for failure to state a claim, such
that "leave to amend will be denied as futile only if the
proposed new claim cannot withstand a 12(b)(6) motion to dismiss
for failure to state a claim."  *Id.*

### A.  Commissioner Pallito and the DOC

The Commissioner and the DOC oppose the motion to amend on
futility grounds.  Rosen concedes that all claims against the DOC
under Section 1983 are barred by sovereign immunity, regardless
of the form of relief sought.  Accordingly, the DOC cannot be
named as a Defendant in Counts I, III, IV, VII, and VIII.  This
leaves claims against the DOC in Rosen's ADA and Rehabilitation
Act Claims set forth in the amended Count II, a claim of wrongful
segregation in violation of the Rehabilitation Act in the amended
Count V, and a medical malpractice claim in the amended Count VI.

Arguments from the Commissioner and the DOC with respect to
Rosen's amended ADA claim fail for substantially the same reasons
as discussed above with regard to the Commissioner's motion to
dismiss.  Briefly stated, Rosen claims that his mental health
prohibits him from participating in the VTPSA, while Defendants
have punished him for failure to complete that program.  Because
Defendants' actions may be discriminatory, the Court has allowed
and will continue to allow that claim to proceed.

The Commissioner further asserts that any Section 1983
claims brought against him in his individual capacity are futile
for failure to allege the requisite personal involvement.  As
with Rosen's Eighth Amendment claim, the newly-asserted
retaliation claim does not allege sufficient personal involvement
by the Commissioner.  While discovery may reveal factual support
for claims against prison personnel in their individual
capacities, the Eighth Amendment and retaliation claims against
the Commissioner cannot go forward at this time.[6]

In his official capacity, the Commissioner claims that
programming, education, and work assignments are within the DOC's
discretion, and that any claims of future placement in
segregation are speculative.  The Court explained above that even
for matters that are strictly within the discretion of the DOC,
such as programming, the DOC may not apply its discretion in a
discriminatory manner.

As to whether the prospect of segregation is overly
speculative, "one does not have to await the consummation of
threatened injury to obtain preventative relief."  *Farmer v.
Brennan*, 511 U.S. 825, 845 (1994).  Rosen claims that his mental
illness gives rise to violence, which in turn results in prison

---

[6]Because the parties have not briefed the question of personal
involvement outside of a Section 1983 claim, the Court offers no
opinion with respect to the merits of Rosen's non-Section 1983 claims
against the Commissioner in his individual capacity.

16

discipline and, at times, segregation.  Because Rosen alleges that Defendants are not adequately treating his mental illness, this cycle of violence, discipline, and segregation will likely continue.  Accordingly, Rosen's plea for prospective injunctive relief with respect to future placement in segregation will not be barred as futile.

The Commissioner next asks the Court to bar Rosen's retaliation claim, arguing that the Defendants have not taken any adverse actions, and that there is no causal connection between their alleged actions and Rosen's protected activities.  The proposed retaliation claim alleges a range of protected conduct, from prison grievances to medical requests to the instant federal lawsuit.  After engaging in such conduct, Rosen has allegedly been singled out for mistreatment, including disciplinary proceedings, denials of medications, and a transfer from a two-person cell to a four-person cell.  These allegations are sufficient to allege both adverse actions and a causal connection, and the Court **grants** leave to amend to add Rosen's request for prospective relief.

### B.   Correct Care Solutions

Defendant CCS also opposes Rosen's motion to amend.  Its objections are twofold: (1) that Rosen's Eighth Amendment claim does not plausibly allege wrongful conduct by CCS, and (2) that any claim for relief is limited to injunctive relief, and is moot

because CCS is no longer the health care provider for Vermont inmates.  The Eighth Amendment allegations against CCS are indeed sparse, as Rosen claims that the denial of work and educational opportunities violates his Mental Health Treatment Plan.  While that Treatment Plan was allegedly developed by CCS, there is no allegation that CCS controls either work or educational assignments within Vermont prisons.  This claim is therefore futile.

The ADA claim is less straightforward.  CCS contends that damages are not recoverable in an ADA anti-retaliation claim. Courts within the Second Circuit "are divided on this question." *Pacheco v. Park South Hotel, LLC*, 2014 WL 292348, at *4 (Jan. 27, 2014) (comparing *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 364 (E.D.N.Y. 2008) (holding that compensatory and punitive damages are not available pursuant to the anti-retaliation provisions of the ADA), with *Edwards v. Brookhaven Sci. Assocs.*, 390 F. Supp. 2d 225, 236 (E.D.N.Y. 2005) (holding that compensatory damages may be awarded on retaliation claims under the ADA)).  The Second Circuit has not addressed the question directly, but has affirmed an award of compensatory damages in an ADA retaliation case.  *See Muller v. Costello*, 187 F.3d 298 (2d Cir. 1999).  While this may be an area for further briefing by both parties, the Court will not prevent a damages claim from going forward at this time.

18

Injunctive relief, however, appears to be unavailable. Counsel for CCS has submitted an affidavit attesting to the fact that CCS no longer provides medical services in Vermont's correctional system, and that any claim for prospective relief is therefore moot.  ECF No. 54-1.  Rosen counters that his allegations must be accepted as true, and that any factual finding as to CCS's status as a contractor is premature.

Mootness is a matter of jurisdiction, since a federal courts may only hear "cases" or "controversies" that are "live." *Blackwelder v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989).  When resolving a jurisdictional question, the Court may rely on evidence outside the pleadings.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The Court therefore accepts counsel's sworn declaration that since February 2015, another contractor has been serving as health care provider for Vermont inmates.  To order CCS to provide injunctive relief would be meaningless, and any claim to such relief from CCS is futile.

### C.  Conclusions Re: Motion to Amend

Rosen's motion to amend is **granted in part and denied in part** consistent with each of the Court's rulings above.  A Second Amended Complaint may be filed within 21 days of this Opinion and Order.

### III. Motion to Re-Implement Medical Treatment

Rosen also moves the Court to order re-implementation of

19

certain medical treatment.  The motion contends that CCS has
created a Medical Health Treatment Plan that contemplates
creative, mental, and physical activities.  Rosen claims that in
retaliation for filing this lawsuit, he has been denied
opportunities for prison work, education, and recreation, thereby
violating the Treatment Plan.  Rosen also seeks additional
psychotherapy.

Rosen's motion, although not titled as such, requests
preliminary injunctive relief.  Injunctive relief is "an
extraordinary remedy." *Winter v. Natural Resources Defense
Council, Inc.*, 555 U.S. 7, 22 (2008).  In the Second Circuit, a
party seeking a preliminary injunction "must demonstrate that it
will suffer irreparable harm absent injunctive relief and either
(1) that it is likely to succeed on the merits of the action, or
(2) that there are sufficiently serious questions going to the
merits to make them a fair ground for litigation, provided that
the balance of hardships tips decidedly in favor of the moving
party." *Mullins v. City of New York*, 626 F.3d 47, 52–53 (2d Cir.
2010); *see also Lynch v. City of New York*, 589 F.3d 94, 98 (2d
Cir. 2009).  Where, as in this case, a party seeks a mandatory
injunction that "alter[s] the status quo by commanding some
positive act," that party must meet an even higher standard.  *Tom
Doherty Associates, Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34
(2d Cir. 1995).  The moving party must establish a "'clear' or

20

'substantial' likelihood of success," or show that "extreme or very serious damage" would result in the absence of preliminary relief. *Id.* at 34.

Rosen has failed to meet this standard. His mental illness is undoubtedly serious, manifesting at times in self-harm and psychotic breaks. His motion contends that certain conditions of his prison life, such as work and education, are important for his mental health and need to be maintained. Without any affidavits or other evidence in support, however, Rosen cannot establish that such opportunities are indeed an essential part of his mental health treatment.

Defendants do not dispute that the DOC terminated Rosen's employment in August 2014. While Rosen alleges retaliation, the DOC insists that the termination was due to Rosen's refusal to participate in the VTSPA. An affidavit from DOC personnel explains that in an effort to encourage rehabilitation, the DOC only allows inmates to work when they are in compliance with their respective case plans. ECF No. 55-2 at 1.

The DOC also disputes Rosen's claim that he has been unable to participate in educational services. NSCF correctional educator Harmony Harriman has submitted an affidavit attesting that Rosen is currently enrolled in the CHSVT Workforce Readiness Program, which meets for four hours per day four times a week. Ms. Harriman further avers that the DOC has not prevented Rosen

from engaging in education classes.

The DOC further disputes Rosen's claim that his recreational activities have been reduced.  Robert Berthiaume, Security and Operations Supervisor at NSCF, explains in his affidavit that Rosen is housed in the privileged Delta Alpha Unit, and is provided with the same recreational opportunities as other inmates in that unit.  ECF No. 55-4 at 1.  Current recreational periods in the Delta Alpha Unit occur three times per day for between 30 and 55 minutes each.  *Id.*  Although there have been recent changes in the schedule, Mr. Berthiaume attests that those changes had nothing to do with Rosen individually.

The final issue in question pertains to Rosen's desire for additional psychotherapy.  CCS has submitted evidence that Rosen is receiving therapy at least once every two weeks, and that his condition is stable.  Rosen has therefore failed to meet his burden on this claim, as his allegation appears to represent a "mere disagreement over the proper treatment," which the Supreme Court has held "does not create a constitutional claim" so long as "the treatment given is adequate."  *Chance*, 143 F.3d at 703.

Given these facts, the Court finds that Rosen has failed to demonstrate a clear likelihood of success on the merits.  Accordingly, and based upon the current record, the motion to re-implement medical treatment is **denied.**

22

## Conclusion

For the reasons set forth above, the Commissioner's motion to dismiss (ECF No. 45) is **granted in part and denied in part**, Rosen's motion for leave to file Second Amended Complaint (ECF No. 53) is **granted in part and denied in part**, and Rosen's motion to re-implement medical treatment (ECF No. 46) is **denied.**

Rosen may file a Second Amended Complaint within 21 days of this Opinion and Order.

DATED at Burlington, in the District of Vermont, this 5th day of August, 2015.


/s/ William K. Sessions III
William K. Sessions III
District Court Judge